IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK BRADFORD YARBROUGH, SR.,<br>        Petitioner, | )<br>)<br>) |
| | ) Crim. Action No. 06-203 |
| v. | ) Civil Action No. 13-416 |
| | ) |
| UNITED STATES OF AMERICA,<br>        Respondent. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Pending before this Court is Petitioner Mark Bradford
Yarbrough, Sr.'s Motion to Vacate, Set Aside, or Correct
Sentence under the federal habeas statute, 28 U.S.C. § 2255 [ECF
No. 204].[1]  Mr. Yarbrough contends in his motion that he was
improperly sentenced as an armed career criminal under the Armed
Career Criminals Act ("ACCA"), 18 U.S.C. § 924(e).  For the
reasons that follow, we will deny the petition.

## I.  BACKGROUND

The parties are familiar with the background and issues in
this case.  Therefore, we will recount only the essential facts.

---

[1] All docket references in this opinion refer to United States v.
Yarbrough, Cr. No. 06-203 (W.D. Pa. filed June 6, 2006).  This case was
originally assigned to the late Chief Judge Gary L. Lancaster and, following
his untimely death, was reassigned to the current docket on May 23, 2013.

A federal grand jury indicted Mr. Yarbrough with two counts of Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) on June 6, 2006. Mr. Yarbrough retained attorney Daniel Chunko to represent him in this matter. Mr. Chunko filed numerous pretrial motions on behalf of Mr. Yarbrough. However, on July 26, 2006, Mr. Chunko filed a Motion to Withdraw as Attorney, explaining that a conflict of interest with his client arose because, among other things, Mr. Yarbrough discussed his criminal case with other attorneys and then lied about doing so when Mr. Chunko confronted him. On August 15, 2006, the Court granted the motion to withdraw and appointed Warner Mariani as Mr. Yarbrough's counsel. Less than two months later, Mr. Mariani also filed a Motion to Withdraw as Attorney, citing irreconcilable differences due to Mr. Yarbrough's persistent requests to file motions that Mr. Mariani believed to be meritless. The Court granted the motion and subsequently appointed James Donohue as Mr. Yarbrough's counsel. Mr. Donohue filed on behalf of Mr. Yarbrough numerous Motions for Extension of Time to File Pretrial Motions [see ECF Nos. 41, 45, 50, 54, 62, 65, 68, 77, 79, 82, 87], a Motion for Hearing for Reconsideration of Bond Pending Trial [ECF No. 44], a Motion to Reconsider Request for Bail [ECF No. 71], as well as a Notice of Appeal of Conditions of Release [ECF No. 75].

On February 21, 2008, Mr. Donohue also filed a Motion to Withdraw as Attorney, explaining that Mr. Yarbrough had requested that he withdraw. The Court granted the motion and allowed Mr. Yarbrough to proceed pro se on the condition that Mr. Donahue would act as stand-by counsel [ECF No. 93]. Specifically, the Court directed as follows:

> Attorney Donohue's role will be limited to provide defendant legal advi[ce] and counsel, will attend any additional hearings and trial and should be prepared to take over the defense of defendant should he change his mind to act pro se; Attorney Donohue will not be responsible for conducting any factual investigation on defendant's behalf, conducting any legal research that defendant may request, prepare any motions, accompanying briefs, or filings on defendant's behalf, mail service of process with the court or the government, represent defendant in any pre-trial hearings, or defend defendant at trial.

[ECF No. 93]. Between April 22, 2008 and May 26, 2009, Mr. Yarbrough filed numerous pro se motions.

On May 26, 2009, Mr. Yarbrough, acting *pro se,* pled guilty to Count Two of his indictment pursuant to a written plea agreement that included a waiver of collateral rights provision [ECF No. 142 ¶ A.11]. Mr. Yarbrough's plea agreement also included a waiver of appellate rights with an exception permitting an appeal regarding the district court's exercise of jurisdiction over the matter and denial of Mr. Yarbrough's motion to dismiss [id. ¶ A.11(c)]. The plea agreement also specifically provides that Mr. Yarbrough "waives the right to

file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence" [ECF No. 142 ¶ A.11]. Finally, relevant to this Petition, the plea agreement explained that "[t]he penalty that may be imposed upon Mark Bradford Yarbrough, Sr. is: (a) A term of imprisonment of not less than 15 years and not more than life" and that "I have received this letter from my stand-by counsel, James F. Donohue, Esquire/ have read it and discussed it with him/ and I hereby accept it and acknowledge that it fully sets forth my agreement with the Office of the United States Attorney for the Western District of Pennsylvania." The Court conducted a plea colloquy with Mr. Yarbrough and accepted his guilty plea.

On June 2, 2009, i.e. post plea hearing, Mr. Yarbrough filed a motion to reappoint Mr. Donohue as counsel, which the Court granted [ECF No. 149]. That same day, Mr. Yarbrough also filed a Notice of Appeal arguing that (1) the Court lacked jurisdiction over his criminal prosecution, (2) the Government lacked standing to prosecute him, and (3) the Government violated the Speedy Trial Act, 18 U.S.C. § 3161 [ECF No. 148]. The United States Court of Appeals for the Third Circuit stayed Mr. Yarbrough's appeal pending entry of a Judgment and Commitment order by the district court [ECF No. 152].

4

On August 28, 2009, Mr. Yarbrough, acting on his own, filed a Motion to Withdraw Guilty Plea [ECF No. 157]. In Mr. Yarbrough's pro se motion, he argued that the Government misled him regarding the contents of a videotape of the September 12, 2005 incident that led to his arrest and, thus, had breached the parties' May 26, 2009 plea agreement. The Court notes that Mr. Yarbrough's Motion to Withdraw Guilty Plea made no mention of the issues raised in the pending Motion to Vacate. Mr. Yarbrough subsequently filed several other pro se motions prior to his sentencing hearing, including a Motion to Preserve Rights [ECF No. 146], a Motion Asking Court to Answer Defendant's Motion to Withdraw Guilty Plea [ECF No. 159], and a Motion Requesting the Court to Make Opinion for Appellate Review [ECF No. 158]. On March 11, 2010, Mr. Donohue filed a Motion to Adopt Defendant's Pro Se Motions [ECF No. 191].

At Mr. Yarbrough's sentencing hearing on March 12, 2010, Mr. Donohue informed the Court that Mr. Yarbrough was withdrawing his Motion to Withdraw Guilty Plea [ECF No. 196 at 3:10-16]. After resolving Mr. Yarbrough's other outstanding motions, the Court proceeded to sentencing [ECF No. 194]. The Pre-sentence Investigation Report ("PSR"), utilizing the 2008 edition of the United States Sentencing Commission Guidelines Manual (the "Guidelines"), assigned a base offense level of 24 through application of section 2K2.1(a)(2). Under section

2K2.1(a)(2), a base offense level of 24 is applicable if a defendant committed any part of the offense at issue subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense. The PSIR noted Mr. Yarbrough was convicted of Delivery of a Controlled Substance in 1995 and Criminal Conspiracy (Delivery of Controlled Substance) in 1997. Finding that the firearm in question was stolen, the offense level was increased by two levels pursuant to section 2K2.1(b)(4).

Under Section 4B1.4(a) of the Guidelines, if the defendant was convicted of a violation under 18 U.S.C. § 922(g)(1) and has at least three prior convictions for either a violent felony, serious drug offense, or both, he is deemed an "armed career criminal" and can be subjected to an enhanced sentence under 18 U.S.C. § 924(e). The PSIR noted Mr. Yarbrough's criminal history involved three prior convictions for delivery of controlled substances, committed on occasions different from one another, which the Probation Officer explained in the PSIR was for delivery of crack cocaine. [See ECF No. 214-1 at 6-7, 11-14]. Therefore, Mr. Yarbrough was deemed an armed career criminal and his offense level was raised to 33. Pursuant to Guidelines section 3E1.1(a) and (b), the offense level was reduced a total of three points for timely acceptance of responsibility, thereby lowering the offense level to a total of

6

30. The Court did not apply the four-level enhancement under section 2K2.1(b)(6). [ECF No. 196 at 9-10]. The applicability of this particular enhancement, which is triggered if the defendant used or possessed the firearm in connection with another felony offense, was one of the issues Mr. Yarbrough raised in his Motion to Withdraw Guilty Plea [ECF No. 157 ¶ 9].

Based on an offense level of 30 and a criminal history of IV, the Court determined Mr. Yarbrough's Guidelines sentencing range to be 135 to 168 months' incarceration. However, Mr. Yarbrough faced a statutory minimum sentence of 180 months under Count Two of the indictment. Thus, on March 12, 2010, the Court sentenced him to 180 months' incarceration and five years of supervised release. Mr. Donohue represented Mr. Yarbrough at his sentencing.

Following the judgment of the district court, on November 18, 2011, the United States Court of Appeals for the Third Circuit issued its decision on Mr. Yarbrough's appeal. The court of appeals affirmed the district court's exercise of jurisdiction and refusal to dismiss Mr. Yarbrough's indictment, and rejected Mr. Yarbrough's claim that the Government violated the Speedy Trial Act [ECF Nos. 202-203]. On March 19, 2012, Mr. Yarbrough filed a petition for writ of certiorari, which was denied. Yarbrough v. United States, 132 S. Ct. 1775 (2012). Subsequently, on March 18, 2013, Mr. Yarbrough filed a timely

Motion to Vacate under 28 U.S.C. 2255, which was assigned Civil Action No. 13-416 [ECF No. 204].[2]

## II.  STANDARD OF REVIEW UNDER 28 U.S.C. § 2255

The federal habeas statute permits an individual in custody to petition a court for release on the ground that his sentence was imposed in violation of the Constitution or the laws of the United States.  28 U.S.C. § 2255(a).  Post-conviction relief is available only in "exceptional circumstances" to correct either "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure."  Hill v. United States, 368 U.S. 424, 428 (1962).

### A.  Procedural Default Rule

Because a section 2255 motion is a collateral attack on a sentence, "a [petitioner] must clear a significantly higher hurdle than would exist on direct appeal" in proving that he is entitled to relief.  United States v. Frady, 456 U.S. 152, 166 (1982); United States v. Davies, 394 F.3d 182, 189 (3d Cir. 2005).  In seeking collateral review under section 2255, "a

---

[2] The docket reflects a filing date of March 21, 2013 for the Motion to Vacate.  However, pursuant to the prison mailbox rule, a pro se petition is considered formally filed on the date that the prisoner delivers it to prison authorities for mailing.  See Houston v. Lack, 487 U.S. 266 (1998); Burns v. Morton, 134 F.3d 109, 112-13 (3d Cir. 1998).  Here, the envelope containing Mr. Yarbrough's petition is time-stamped March 18, 2013.  Accordingly, the petition was timely filed.

movant ordinarily may only raise claims in a 2255 motion that he raised on direct review" and will have "procedurally defaulted all claims that he neglected to raise on direct appeal." Hodge v. United States, 554 F.3d 372, 378-79 (3d Cir. 2009) (citation omitted). However, a movant will be exempted from the procedural default rule if he can prove "that there is a valid cause for the default, as well as prejudice resulting from the default." Id.

A petitioner need not demonstrate cause and prejudice when raising a claim of ineffective assistance of counsel for the first time in a collateral attack. Massaro v. United States, 538 U.S. 500, 504 (2003) (holding that an "ineffectiveness" claim can be brought in a collateral proceeding under section 2255 regardless of whether the same issue could have been addressed on direct appeal). Plausible ineffective assistance of counsel claims that, if proven, would rise to the level of a Sixth Amendment violation, constitute cause to excuse procedural default. See Hodge, 554 F.3d at 379 (citations omitted).

Finally, the collateral remedy available to prisoners under section 2255 "does not encompass all claimed errors in conviction and sentencing." United States v. Addonizio, 442 U.S. 178, 185 (1979). "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted

'a fundamental defect which inherently results in a complete miscarriage of justice.'" Id. (quoting Hill, 368 U.S. at 428).

## B.    Evidentiary Hearing

When a motion is made under section 2255, the question of whether to order a hearing is committed to the sound discretion of the district court.  In exercising that discretion, the court must accept the truth of the petitioner's factual allegations unless, based on the record, they are clearly frivolous.  United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992).  Further, the court must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the petitioner is not entitled to relief.  Id. We find no need for an evidentiary hearing as the record conclusively establishes that the Mr. Yarbrough is not entitled to the relief sought in the petition.

## III.    LEGAL ANALYSIS

In his Motion to Vacate under section 2255, Mr. Yarbrough raises three issues.  First, he argues that his counsel, Mr. Donohue, improperly advised him to plead guilty to being an armed career criminal even though he lacked the necessary qualifying predicate convictions to be sentenced as such under the Armed Career Criminals Act ("ACCA"), 18 U.S.C. § 924(e). Second, Mr. Yarbrough contends that his counsel failed to object

to the district court's erroneous application of the ACCA at sentencing. Third, Mr. Yarbrough argues that his counsel failed to appeal the district court's erroneous application of the ACCA, thereby rendering his guilty plea unintelligent, unknowing, and involuntary [ECF No. 204 at 4].

Mr. Yarbrough has filed his motion to vacate despite explicitly agreeing in his plea agreement to waive the right to file such a motion. The Government argues that Mr. Yarbrough's waiver must be enforced and his motion dismissed. Accordingly, we must first address whether Mr. Yarbrough's waiver of his right to file a motion pursuant to section 2255 is enforceable.

"A criminal defendant 'may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution.'" United States v. Khattak, 273 F.3d 557, 561 (3d Cir. 2001) (quoting United States v. Mezzanatto, 513 U.S. 196, 201 (1995)). Such waivers are enforceable "provided that they are entered into knowingly and voluntarily and their enforcement does not work a miscarriage of justice." United States v. Mabry, 536 F.3d 231, 237 (3d Cir. 2008) (citing Khattak, 273 F.3d at 562).

The Court has "an independent obligation to conduct an evaluation of the validity of a collateral waiver." Mabry, 536 F.3d at 238. Specifically, we must examine the "(1) knowing and voluntary nature, based on what occurred and what defendant

11

contends, and (2) whether enforcement would work a miscarriage of justice." Id. at 237. "Whereas a defendant bears the burden of presenting an argument that would render his waiver unknowing or involuntary, a court has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it." Id. at 237-238 (citing Khattak, 273 F.3d at 563).

A. Knowing and Voluntary Nature of the Waiver

With regard to whether the waiver was knowing and voluntary we must, at a minimum, "review[] the terms of the plea agreement and change-of-plea colloquy and address[] their sufficiency." Mabry, 536 F.3d at 238.

Pursuant to the plea agreement, Mr. Yarbrough agreed to waive his right to take a direct appeal from his conviction subject to several exceptions. Specifically, Mr. Yarbrough was permitted to appeal the issues of (1) whether the Court properly exercised jurisdiction; and (2) whether the Court properly denied Mr. Yarbrough's motion to dismiss. [ECF No. 142 ¶ A.11(c)]. The parties also agreed that Mr. Yarbrough could appeal if the United States appeals from the sentence, or if the sentence exceeds the statutory limits or unreasonably exceeds the Guidelines range [id. ¶¶ A.11(a)-(b)]. Mr. Yarbrough also agreed to waive his right to file a motion to vacate sentence

12

under section 2255 attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence [id. ¶ A.11]. Mr. Yarbrough signed the plea agreement acknowledging that he understood the terms of the agreement. We find the terms of the plea agreement to be sufficient and clear with regard to the waiver of collateral rights.

The knowing and voluntary nature of Mr. Yarbrough's waiver was reinforced during the plea colloquy. During the plea colloquy, Mr. Yarbrough was determined to be competent to plead [ECF No. 213-3 (Transcript of Plea Hearing, May 26, 2009) at 3-4]. The Court explained to Mr. Yarbrough what his rights would be if he went to trial [id. at 4-6]. Count Two of the Indictment was read to Mr. Yarbrough, as well as what the Government would have to prove at trial with respect to each charge [id. at 7-8]. The Court also explained the applicable penalties. In particular, the Court noted that if Mr. Yarbrough was determined to have three previous convictions for a violent felony or serious drug offense, or both, then the statutory penalty of a term of imprisonment of not less than 15 years to a maximum of life would apply [id. at 8]. When asked if he understood the penalties, Mr. Yarbrough responded by saying, "Yes, sir" [id.]. In addition, the terms of the plea agreement that Mr. Yarbrough signed clearly stated that the Government and

Mr. Yarbrough agree that he was subject to a "term of imprisonment of not less than 15 years and not more than life" [ECF No. 142 ¶ C.1].

The Court then explained the terms of the plea agreement to Mr. Yarbrough [ECF No. 213 at pp. 10-12]. When asked if he understood the limitations on his appeal rights, Mr. Yarbrough responded by saying, "Yes, sir" [id. at 14]. In addition, the Court asked the following question regarding Mr. Yarbrough's prior convictions:

> Q: Did you, as charged in Count 2 of the indictment, after having been convicted in the Court of Common Pleas of Washington County, Pennsylvania, for the crimes of robbery and conspiracy to commit robbery on September 10th, 1987, and of delivery of controlled substances and conspiracy to deliver controlled substances on September 15th, 1995, and again on October 31, 1997, all of which are punishable by a term of imprisonment exceeding one year, and that, thereafter you knowingly possessed in and affecting interstate commerce a firearm . . . .
>
> A: Yes, sir.

[Id. at 15]. The Government also set forth its evidence against Mr. Yarbrough [id. at 15-17]. The Court asked Mr. Yarbrough if he "agree[d] with the government's summary of what [he] did," and Mr. Yarbrough responded, "Yes, sir" [id. at 17]. The Court further asked Mr. Yarbrough if "anyone made a threat to [him] or to anyone else that has forced [him] to plead guilty," to which he responded, "No, sir" [id. at 8]. The Court then asked Mr. Yarbrough if "anyone made a promise to [him] as to what [his]

14

actual sentence is going to be" to which he responded, "No, sir" [id. at 14].

Federal Rule of Criminal Procedure 11(b)(1)(N) requires that before accepting a plea of guilty, the district court must "inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(N). For purposes of the present analysis, we find that Mr. Yarbrough's guilty plea was knowing and voluntary and that, specifically, his waiver of collateral rights was knowing and voluntary.

B. Miscarriage of Justice

We next address whether enforcement of the waiver "would work a miscarriage of justice in this case." Mabry, 536 F.3d at 239. In so doing, the Court is to use a "common sense approach" and to "look to the underlying facts to determine whether a miscarriage of justice would be worked by enforcing the waiver." Id. at 243. There is no identified list of specific circumstances to consider before invalidating a waiver as involving a miscarriage of justice. Id. However, the Court of Appeals for the Third Circuit has instructed that we should consider "'the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the

defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.'" Id. at 242-243 (quoting United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001)).

Here, the substantive arguments in support of Mr. Yarbrough's section 2255 motion arise out of his claim that he received ineffective assistance of counsel such that his right to counsel under the Sixth Amendment to the United States Constitution was violated. Specifically, Mr. Yarbrough contends that his defense counsel was ineffective because he advised Mr. Yarbrough to plead guilty to being an armed career criminal, he did not object to the Court sentencing Mr. Yarbrough as an armed career criminal, and he did not argue on appeal that the Court erred when it sentenced Mr. Yarbrough as an armed career criminal.

The PSIR explained that Mr. Yarbrough had been previously convicted of robbery and conspiracy to commit robbery and delivery and conspiracy to deliver drugs. [ECF No. 214 at 2]. Mr. Yarbrough contends, however, that because "the record is silent as to the generic element of drug type underlying the three disputed drug convictions, . . . there is no way the district court could satisfy itself that those convictions qualified under [the ACCA]" [ECF No. 205 at 6]. Mr. Yarbrough also argues that the three prior drug convictions at issue

16

cannot qualify as predicate offenses under section

924(e)(2)(A)(ii) because, according to him, these offenses "were

not punishable by a term of at least ten years imprisonment" and

that his drug convictions could not possibly have involved

cocaine because Pennsylvania law mandates a minimum three-year

sentence for recidivist cocaine offenses and none of his

convictions resulted in a three-year term of imprisonment. [id.

at 5]. See 18 Pa. Cons. Stat. Ann. § 7508(a)(2)(i) ("[I]f at the

time of sentencing the defendant has been convicted of another

drug trafficking offense [the mandatory minimum term is] three

years in prison."). In support thereof, Mr. Yarbrough has

provided the Court with docket sheets from the state court cases

at issue.

The Armed Career Criminal enhancement is found at 18 U.S.C.

§ 924(e) and provides in relevant part:

> (1) **In the case of a person who violates section
> 922(g) of this title and has three previous
> convictions by any court referred to in section
> 922(g)(1) of this title for . . . a serious drug
> offense** . . . committed on occasions different from
> one another, **such person shall be fined under this
> title and imprisoned not less than fifteen years**, and,
> notwithstanding any other provision of law, the court
> shall not suspend the sentence of, or grant a
> probationary sentence to, such person with respect to
> the conviction under section 922(g).

(2) As used in this subsection—

(A) **the term "serious drug offense" means**—

(ii) **an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance** (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), **for which a maximum term of imprisonment of ten years or more is prescribed by law**[.]

[id.] (emphasis added). Under the Pennsylvania law applicable during the relevant time period, a person convicted of delivery or possession with intent to deliver crack cocaine was subject to a term of imprisonment "not exceeding ten years." 35 Pa.Con.Stat §§780-113(a)(30) and (f)(1.1).

Relevant to this inquiry, paragraph 40 of the PSIR states that, "[a]ccording to a criminal complaint, search warrant application, and affidavit of arrest, on December 14, 1994, the defendant delivered crack cocaine to an undercover detective." [ECF No. 214-1 ¶ 40]. Paragraph 40 then explains that on September 15, 1995, the defendant pled guilty and was sentenced for possession of a controlled substance and delivery of a controlled substance. [id. ¶ 40]. Paragraph 41 of the PSIR states that "[a]ccording to a criminal complaint and affidavit of arrest, on February 3, 1995, an undercover detective met with the defendant in order to purchase crack cocaine. . . . The defendant handed four rocks of crack cocaine to the confidential informant. . . ." [id. ¶ 41]. Paragraph 41 then explains that

18

on September 15, 1995, the defendant pled guilty and was sentenced for delivery of a controlled substance and criminal conspiracy (delivery of a controlled substance). [id.]. Paragraph 44 of the PSIR states "[a]ccording to a criminal complaint and affidavit of probable cause, on October 2, 1996," . . . "the detective met with the defendant and purchased one wrapped rock of crack cocaine for $110. The defendant provided it to [an individual]. . . ." [id. ¶ 44]. Paragraph 44 then explains that on October 31, 1997, the defendant pled guilty and was sentenced for delivery of a controlled substance. [id.].

A claim of ineffective assistance "requires a defendant to establish that counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced the defendant." McAleese v. Mazurkiewicz, 1 F.3d 159, 166 (3d Cir. 1993) (citing Strickland v. Washington, 466 U.S. 668, 687-688 (1984)).

In assessing the first prong of the Strickland "ineffective assistance of counsel" analysis, the Supreme Court has instructed that "[t]he proper measure of attorney performance" is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688. This is an objective standard, and must be "viewed to the extent possible without 'the distorting effects of hindsight.'" Duncan v. Morton, 256 F.3d 189, 200 (3d Cir. 2001) (quoting Strickland, 466 U.S. at 689-90). In

19

addition, a "reviewing court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" McAleese, 1 F.3d at 175 (quoting Strickland, 466 U.S. at 692). "The defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (citation omitted).

At the second part of the Strickland analysis, "[t]o establish prejudice, a defendant must demonstrate that there is a 'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Weeks v. Snyder, 219 F.3d 245, 257 (3d Cir. 2000) (quoting Strickland, 466 U.S. at 694). The Supreme Court has explained that a "reasonable probability" is one that is "sufficient to undermine confidence in the outcome." Id. at 694. In making the prejudice determination, the court must consider the totality of the evidence. Id. at 695.

A petitioner's claim of ineffective assistance must identify the specific errors that counsel is alleged to have made. Conclusory allegations are not sufficient to support a petition under section 2255. Blackledge v. Allison, 431 U.S. 63, 74 (1977). See also United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000) (citing United States v. Dawson, 857 F.2d 923, 928 (3d Cir. 1988) (reiterating that "vague and conclusory

allegations contained in a 2255 petition may be disposed of without further investigation by the District Court.").

For the following reasons, the Court rejects Mr. Yarbrough's contention that he received ineffective assistance of counsel such that his right to counsel under the Sixth Amendment to the United States Constitution was violated when he was improperly sentenced as an armed career criminal under the ACCA. First, with respect to Mr. Yarbrough's contention that he received ineffective assistance of counsel at his plea hearing when defense counsel advised him to plead guilty to being an armed career offender, Mr. Yarbrough at the time of his plea hearing was acting pro se, with defense counsel acting as stand by counsel. As the appellate court stated in United States v. Peppers, 302 F.3d 120, 130 (3d Cir. 2002) (citing Faretta v. California, 422 U.S. 806, 834 (1975)): "[A] defendant who chooses to represent himself must be allowed to make that choice, even if it works "ultimately to his own detriment."

Second, with respect to Mr. Yarbrough's contention that defense counsel was ineffective when he failed to object at sentencing to the Court's finding that Mr. Yarbrough was an armed career criminal, under Strickland, 466 U.S. 668, "the burden is on the defendant to establish that [his] counsel's performance prejudiced the defense." Marshall v. Hendricks, 307 F.3d 36, 89 (3d Cir. 2002). Here, Mr. Yarbrough has failed to

meet that burden. Other than his attempts to poke holes in the
Government's evidence supporting the applicability of the armed
career criminal enhancement, he has not offered, as is his
burden, any evidence that even suggests that the three state
court drug convictions at issue were not, as stated in the PSIR,
for delivery of crack cocaine, which under Pennsylvania law were
punishable by a maximum term of imprisonment of ten years.[3]

Third, with respect to Mr. Yarbrough's contention that
defense counsel was ineffective when he failed to appeal the
Court's finding that Mr. Yarbrough was an armed career criminal,
as explained by the Court of Appeals for the Third Circuit in
United States v. Watkins, 54 F.3d 163, 166-67 (3d Cir. 1995),
"it is well established in this circuit, and all others, that a
sentencing court may rely on the facts set forth in the
presentence report when their accuracy is not challenged by the
defendant." (citing Fed. R. Crim. P. 32(b)(6)(D); United States
v. Garcia, 544 F.2d 681, 684 (3d Cir. 1976) (failure to request
evidentiary hearing on hearsay information in presentence report
waives defendant's objection to sentencing court's reliance on
such hearsay); United States v. Bregnard, 951 F.2d 457, 459 (1st
Cir. 1991) (although assault and battery statutes included non-
violent conduct, district court did not err in concluding that

---

[3] Contrary to Mr. Yarbrough's assertion, the state court criminal records he has submitted in support of his position
that the drugs could not have been cocaine do not mandate that conclusion.

prior assault and battery convictions were "violent felonies"
when it relied, without objection by defendant, on the factual
narrative of the prior convictions in the presentence report),
cert. denied, 504 U.S. 973 (1992). As such, even if defense
counsel had appealed this Court's determination that Defendant
was an armed career criminal, we are confident that the
appellate court would have affirmed this determination.

Accordingly, for all of the above stated reasons, Mr.
Yarbrough has failed to establish that he received any
ineffective assistance of counsel and on that basis, we find
that enforcement of Mr. Yarbrough's waiver of his collateral
rights would not be a miscarriage of justice in this case.


IV.  CERTIFICATE OF APPEALABILITY

The remaining issue before the Court is whether a
certificate of appealability ("COA") should be issued with
respect to Mr. Yarbrough's section 2255 motion.  A court should
issue a COA where a petitioner makes a "substantial showing of
the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).
A petitioner meets this burden by showing that "reasonable
jurists would find the district court's assessment of the
constitutional claims debatable or wrong."  Slack v. McDaniel,
529 U.S. 473, 484 (2000).  We find that jurists of reason would
not find our assessment of Mr. Yarbrough's claims,

constitutional or otherwise, to be either debatable or wrong. Therefore, the Court will deny a certificate of appealability.

V.   CONCLUSION

For the reasons set forth above, petitioner's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 is denied. An appropriate order follows.

ORDER

AND NOW, this _**17**_ day of July, 2013, IT IS HEREBY
ORDERED, ADJUDGED AND DECREED that Petitioner's Motion to
Vacate, Set Aside, or Correct Sentence is DENIED.

IT IS FURTHER HEREBY ORDERED, ADJUDGED AND DECREED
that a Certificate of Appealability SHOULD NOT ISSUE with
respect to the Court's order dismissing petitioner's section
2255 motion, for the reasons set forth in the accompanying
opinion.

_Maurice B. Cohill Jr._
Maurice B. Cohill, Jr.
Senior District Court Judge

cc:

Mark Bradford Yarbrough, Sr., pro se
FCI Pollock
Box 4050
Pollock, LA 71467